|   |   |   |
|---|---|---|
| 1 | joaquin andres acosta | FILED |
| 2 | PO Box 2889 | 2019 JUN 18 AM 9: 31 |
| 3 | Big Bear Lake, California | U.S. DISTRICT COURT<br>CENTRAL DIST. OF CALIF.<br>LOS ANGELES<br>BY: _____ |

District Court for the United States of America

Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of Joaquin Andres Acosta, my heirs, successors, assigns and agents<br><br>v.<br><br>ALLSTATE ENGINEERING, a California Corporation, WESTERN SURETY COMPANY, a South Dakota corporation<br><br>———————————————<br><br>ALLSTATE ENGINEERING, a California corporation,<br>    Counter-claimant,<br><br>v.<br><br>A.J. Acosta Company, Inc., a California corporation. | Case No. 2:13-cv-01438 (DDP)(JCx)<br><br>Joaquin Andres Acosta's<br><br>**EX PARTE**<br><br>Motion to Compel Parties Joaquin Andres Acosta, ALLSTATE ENGINEERING & WESTERN SURETY CORPORATION To Binding Arbitration (ADR); Proposed Order; Certificate of Service.<br><br>(9 U.S.C. §6 and §7)<br><br>(61 Stat. 671/672, ch. 392)<br><br>Date: June 18, 2019<br>Time: 9:30 a.m.<br>Judge: Jacqueline Chooljian<br>255 E. Temple St., Room 750, LA 90012 |

**ORIGINAL**

Page 1 of

Joaquin Andres Acosta, my heir(s), successor(s), assign(s) and agents request/require an order from the court compelling ALLSTATE ENGINEERING and WESTERN SURETY CORPORATION to BINDING ARBITRATION on the following grounds:

## I. Supreme Court Prefers Arbitration

1.1 The Supreme Court in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, No. 17–1272. Argued October 29, 2018—Decided January 8, 2019, 586 U.S. \_\_ (2019)—issued January 8th, provides the following:

1.2 The parties in *Schein*, a manufacturer and a distributor, entered into a contract providing that "any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets or other intellectual property . . .), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association." ...

1.3 Relying on Fifth Circuit precedent permitting the application of a "wholly groundless" test as a means of blocking frivolous attempts to transfer disputes from the courts to arbitration, the district court denied the manufacturer's motion to compel arbitration. After the Fifth Circuit affirmed, the manufacturer sought Supreme Court review to resolve a split among the circuits regarding court authority to apply the "wholly groundless" test.

1.4 The Supreme Court explained that under the FAA, parties may agree to have an arbitrator decide not only the merits of a particular dispute but also the "gateway" question of arbitrability. The Court held that the "wholly groundless" test adopted by several circuit courts is inconsistent with the text of the FAA and the Court's past decisions: "When the parties' contract delegates the arbitrability question to an arbitrator, the court may not

override the contract. In those circumstances the court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless...The Schein decision clarifies that a delegation clause must be "clear and unmistakable," but it does not define the parameters of "clear and unmistakable."

### Practical Impact of Schein

1.5 Whereas the Schein decision is another in a long line of Supreme Court pronouncements favoring arbitration under the FAA.

1.6 The Henry Schein court unanimously reaffirmed the rule that courts must enforce a contract that delegates "gateway" questions about arbitrability to the arbitrator; the specific holding in Henry Schein was that a court must send a case to an arbitrator even if the claim for arbitration strikes the court as wholly groundless

1.7 In this case, however, the Supreme Court is calling for judicial assessment of the objection to arbitration. Gorsuch explains that the provisions of the act obligating courts to stay litigation and compel arbitration (Sections 3 and 4) apply only if the dispute is one to which the act applies under Sections 1 and 2.

1.8 For Gorsuch, "a court must first know whether the contract itself falls within or beyond the boundaries of §§ 1 and 2" before it can "invoke its statutory powers under §§ 3 and 4." In sum, even if the contract is "crystal clear and require[s] arbitration of every question under the sun, ... that does not necessarily mean the Act authorizes a court to stay litigation and send the parties to an arbitral forum."

1.9 In the unanimous decision issued Tuesday, the Supreme Court reversed the holdings of

the district and appeals courts, stating that the FAA should be strictly interpreted and enforced unless the contract clearly states otherwise. In his first opinion for the court, Justice Brett Kavanaugh stated that the court "must respect the parties' decision as embodied in the contract." Since the contract did not include an exception to the arbitration clause in the case of antitrust suits, Kavanaugh stated that it would be "impossible" for the Supreme Court to allow the case to be exempt from the mandatory arbitration.

### The FAA Does Not Include A "Wholly Groundless" Exception For Delegation Clauses

1.10 The U.S. Supreme Court unanimously reversed the fifth circuit, finding that a "wholly groundless" exception to the enforceability of delegation clauses is "inconsistent with the text of the [federal arbitration act] and with our precedent." The high court held that it must interpret the federal arbitration act as written, which in turn requires courts to interpret arbitration agreements as written. **If the contract delegates arbitrability questions to an arbitrator, a court may not override the contract simply because it believes the questions are obvious.** The supreme court previously held in *ATT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649–650 (1986) that a court may not **"rule on the potential merits of the underlying"** claim that is assigned by contract to an arbitrator, **"even if it appears to the court to be frivolous." The court in Henry Schein held that this same principle applies when the issue assigned by contract to an arbitrator is the arbitrability of a party's underlying substantive claims.**

### Public Policy Considerations

1.11 *Archer & White*, the party opposing arbitration, argued that it would be a waste of time and money to send the arbitrability question to an arbitrator if the argument for arbitration

Page 3 of 12

is wholly groundless. But the Supreme Court refused to create an exception to the Federal Arbitration Act that was not included in the statutory text. Further, the Court held that recognizing such an exception would spur "a time-consuming sideshow" of collateral litigation regarding when an argument is wholly groundless, as opposed to merely groundless. **The Court also noted that while a court may find the answer to arbitrability questions obvious, an arbitrator might hold a different view and that the parties' choice to have the arbitrator decide must be respected.** The Court held that if a demand for arbitration is truly frivolous, the arbitrator can quickly dispose of the matter and may be able to impose fee and cost-shifting sanctions in proper circumstances.

cf. The Schein Court held: "The "wholly groundless" exception to arbitrability is inconsistent with the Federal Arbitration Act and this Court's precedent. Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms. Rent-A-Center, West, Inc. v. Jackson, 561 U. S. 63, 67. The parties to such a contract may agree to have an arbitrator decide not only the merits of a particular dispute, but also " 'gateway' questions of 'arbitrability.' " Id., at 68–69. Therefore, when the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract, even if the court thinks that the arbitrability claim is wholly groundless. That conclusion follows also from this Court's precedent. See AT&T Technologies, Inc. v. Communications Workers, 475 U. S. 643, 649–650."

## II. Novation.

2.1 Novation, in contract law and business law,[1] is the act of –

   a. replacing an obligation to perform with another obligation; or

   b. adding an obligation to perform; or

   c. replacing a party to an agreement with a new party.

### Novation vs. Assignment

2.2 In contrast to an assignment, which is generally valid as long as the other party is given notice (except where the obligation is specific to the obligor, as in a personal service

contract with a specific ballet dancer, or where assignment would place a new and special burden on the counter-party), a novation is valid only with the consent of all parties to the original agreement[1]. A contract transferred by the novation process transfers all duties and obligations from the original obligor to the new obligor.

### **Examples of Novation**

2.3 For example, if there exists a contract whereby Dan will give a TV to Alex, and another contract whereby Alex will give a TV to Becky, then, it is possible to novate both contracts and replace them with a single contract wherein Dan agrees to give a TV to Becky. In contrast to assignment, novation requires the consent of all parties. Consideration is still required for the new contract, but it is usually assumed to be the discharge of the former contract.

2.4 Another classic example is when Company A enters a contract with Company B and a novation is included to ensure that if Company B sells, merges or transfers the core of their business to another company, the new company assumes the obligations and liabilities that Company B has with Company A under the contract. So in terms of the contract, a purchaser, merging party or transferee of Company B steps into the shoes of Company B with respect to its obligations to Company A. Alternatively, a "novation agreement" may be signed after the original contract[2] in the event of such a change. This is common in contracts with governmental entities; an example being under the United States Anti-Assignment Act, the governmental entity that originally issued the contract must agree to such a transfer or it is automatically invalid by law.

---

[1]Duhaime, Lloyd (25 May 2012). "Part 6: Restraint of Trade, Assignment, Novation & Frustration". duhaime.org. Duhaime's Contract Law. Retrieved 30 July 2013.

[2]Duhaime, Lloyd (2009). "Novation Definition". duhaime.org. Duhaime's Legal Dictionary. Retrieved 30 July 2013.

2.5 The criteria for novation comprise the obligee's acceptance of the new obligor, the new obligor's acceptance of the liability, and the old obligor's acceptance of the new contract as full performance of the old contract. Novation is not a unilateral contract mechanism, hence allows room for negotiation on the new T&Cs under the new circumstances. Thus, 'acceptance of the new contract as full performance of the old contract' may be read in conjunction to the phenomenon of 'mutual agreement of the T&Cs'.[Fn.1]

### How Novation Applies In This Matter

2.6 Novation, for the purposes of this matter, is fundamentally items number One and Two under the definition of *Novation*,

    a. replacing an obligation to perform with another obligation; and

    b. adding an obligation to perform.

2.7 Though the Organic subcontract called for Court action, under *Novation*, there was a "replacing an obligation to perform (going to court) with another obligation, going to arbitration.

### III. What is Procuration?

3.1 Definition of Procuration:

    a. The act by which one person gives power to another to act in his place, as he could do himself. A letter of attorney.

    b. **Procurations are** either **express** or **implied**; an **express procuration** is one **made by the express consent of the parties**; the implied or tacit takes place when an individual sees another managing his affairs, and does not interfere to prevent it.

3.2 Procurations are also divided into those which contain **absolute power, or a**

general authority, and those which give **only a limited power**. The procurations are ended in three ways first, by the revocation of the authority; secondly, by the death of one of the parties; thirdly, by the renunciation of the mandatory, when it is made in proper time and place, and it can be done without injury to the person who gave it.

### How the Court View Procurations

3.3 An acceptance by silence may be inferred if the offeree is under a duty to act, as for example, under CC 1589 which provides that acceptance of the benefits of a contract constitutes an assumption of the associated obligation. See *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 CA4th, 1372, 1385, 25 CR2d 242.

3.4 Silence may constitute an acceptance if there is a relationship between the parties or a previous course of dealing by which silence should be understood as acceptance. *Southern Cal. Acoustics Co. v. C.V. Holder Inc.* (1969) 71 C2d 719, 722, 79 CR 319" See also, *Circuit City Stores Inc. v Najd* (9th Cir. 2002), 294 F3rd 1104, 1109.

3.5 Silence may operate as an acceptance under the rule stated in the Restatement (Second) of Contracts 69(1)(b) "where the offeror has stated or given the oferee reason to understand that <u>assent maybe manifested by silence or inaction,</u> and <u>the offeree in remaining silent and inactive intends to accept the offer</u>. *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 CA4th, 1372, 1385, 25 CR2d 242.

### IV. What is Tacit Mean ?

4.1 Definition of "tacit."

    a : expressed or carried on without words or speech the blush was a tacit answer— Bram Stoker.

b : implied or indicated (as by an act or by silence) but not actually expressed.

// tacit consent

// tacit admission of guilt.

c. saying nothing; still

d. unspoken; silent

e. (Law) happening without contract but by operation of law

4.2 Maxims: The agreement of the parties makes the law of the contract.

The agreement of the parties overcomes or prevails against the law.

**The essence of a contract being assent**, there is no contract where assent is wanting.

**He who does not deny, admits.** [A well-known rule of pleading]

**It is immaterial whether a man gives his assent by words or by acts and deeds.**

### V. Statement of Facts re Court Record

5.1 On 2/27/2013 the matter was filed.

5.2 On 2/27/2013 the Court directed parties to ADR program

5.3 On 5/10/2013, Allstate and Western filed their answers to the claims and counterclaims.

5.4 On 6/14/2013, Acosta filed Answer to Allstate and Western's counterclaim.

5.5 On 8/20/2013, Court ordered parties to ADR, under ADR procedure number 3, to private arbitration. (Exhibit 1)

5.6 On 5/20/2014, Allstate and Western filed their joint Notice of AJ Acosta Company Inc

1 Bankruptcy.

5.7 On 8/20/2014, Court ordered removal of the matter from Court Calendar.

5.8 On 8/21/2018, Acosta motioned to reopen the matters.

5.9 From 9/18 through 11/02/2018 - Pissing contest btw JO and Acosta.

5.10 On 11/05/2018, Acosta filed his motion to reopen and substitute parties.

5.11 On 11/15/2018, Court ordered substitution of parties.

5.12 On 01/23/2018, Court granted the Acosta motion to reopen case.

## VI. Statement of Administrative Due Process
## Facts Related to Arbitration between Parties

6.1 On 2-7-2019, Acosta sent to ALLSTATE and WESTERN notice RE; Payment of Previous Offer to Settle, or Resumption of Arbitration/ADR. (Exhibit 2)

6.2 On 2/14/2019, Acosta called Mr. Horowitz' office regarding settlement, arbitration. No response.

6.3 On 2-14-2019, Acosta, after receiving no response from ALLSTATE and WESTERN, regarding Payment or Resumption, sent Administrative Exhaustion correspondence related to Arbitration/ADR, to them. Failure to respond would be deemed Tacit Consent. (Exhibit 3)

6.4 On 2/18/2019, Acosta called Mr. Horowitz's office regarding resumption of Arbitration/ADR. No response.

6.5 On 2-18-2019, Acosta after having sent Administrative Exhaustion re Arbitration/ADR, titled NOTICE AND OPPORTUNITY TO CURE, ALLSTATE and WESTERN failed to respond. (Exhibit 4)

6.6 On 2/22/2019, Acosta called Mr. Horowitz's office regarding resumption of Arbitration/ADR. No response.

6.7 On 2/25/2019, Acosta sent to ALLSTATE and WESTERN CERTIFICATE & NOTICE OF NON-RESPONSE, finalizing agreement to binding arbitration, by an arbitrator of Acosta's choice. No response was given. (Exhibit 5)

6.8 On 5/16/2019 Acosta, while at a Deposition for ALLSTATE & WESTERN, before Mr. Horowitz and Guenther, Acosta asked to resume ARBITRATION/ADR. Guenther said, that was along time ago, and were not going back to that. Acosta informed Mr. Horowitz and Guenther that time does not make the order to arbitration fail. They reasserted their positions.

## VII. Discussion

7.1 The Supreme Court requires that the parties arbitrate under the Federal Arbitration Act (9 United States Code Annotated.)

7.2 The Court ordered arbitration in 2013.

7.3 The parties have never arbitrated the matter, though each agreed.

7.4 I have asked ALLSTATE and WESTERN to participate in Arbitration/ADR, but they just ignore me, and are violating the court order to arbitrate.

## VIII. Conclusions

8.1 The parties agreed to arbitration in the Year 2013.

8.2 After reopening the matter, Acosta asked to resume Arbitration through written correspondence and leaving telephonic messages with Mr. Horowitz's secretary.

8.3 Both Allstate and Western have wholly ignored my requests to arbitrate/ADR.

8.4 Acosta, Allstate, Western and Mr. Horowitz agreed through TACIT PROCURATION to binding arbitration, arbitrator to be chosen by Acosta.

## IX. Relief

9.1 An order from the court directing the parties to attending binding arbitration, within thirty days, time, place and location to be chosen by Acosta.

9.2 Court to provide a further order that the arbitrator shall be chosen solely by Acosta.

9.3 Court to further provide that both parties shall pay equal portions for everything arbitration requires: fees for location, court reporter, arbitrator's fees, and fees incidental to arbitration.

9.4 That any refusal to attend arbitration will result in a judgment against ALLSTATE and WESTERN SURETY, under section 15 of The Judiciary Act of

1789 (Ch. 20, 1 Stat. 73).

Under penalty of perjury, this 17 day of June, in the Year of Our Lord, two thousand nineteen.

*joaquin andres acosta.*

Proposed Order annexed.

Certificate of Service annexed.