Jeffrey D. Horowitz, Esq. SBN 150012
**THE HOROWITZ LAW FIRM**
14156 Magnolia Boulevard, Suite 200
Sherman Oaks, CA 91423
(818) 907-8000 (telephone)
(818) 784-5406 (facsimile)
E-mail: jeff@jdhorowitzlaw.com

Attorney for Defendant, ALLSTATE ENGINEERING

Craig E. Guenther, Esq. SBN 126134
**BOOTH, MITCHEL & STRANGE, LLP**
701 South Parker Street, Suite 6500
Orange, CA 92868
(714) 480-8500 (telephone)
(714) 480-8533 (facsimile)
E-Mail: ceguenther@boothmitchel.com

Attorney for Defendant WESTERN SURETY COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of AJ ACOSTA COMPANY, INC., a California corporation,<br><br>                    Plaintiff,<br>vs.<br><br>ALLSTATE ENGINEERING, a California corporation, WESTERN SURETY COMPANY, a South Dakota corporation,<br><br>                    Defendants. | CASE NO. **CV13-01438-DDP**<br><br>**ALLSTATE ENGINEERING AND WESTERN SURETY COMPANY'S TRIAL BRIEF**<br><br><br>PRE-TRIAL CONF. : 10/21/2019<br>TRIAL             : 10/29/2019<br><br>JUDGE: Hon. Dean D. Pregerson |

**ALLSTATE ENGINEERING AND WESTERN SURETY COMPANY'S TRIAL BRIEF**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**COMES NOW** Defendant and Counterclaimant ALLSTATE ENGINEERING and Defendant WESTERN SURETY COMPANY and present their Trial Brief:

## I.

## <u>Background</u>

Defendant and Counterclaimant, Allstate Engineering (hereafter "Allstate" or "Allstate Engineering") was the prime contractor on a federal demolition project located at Vandenberg Air Force Base (VAFB), known as "Demolish East Housing Infrastructure, Vandenberg Air Force Base, Santa Barbara County, CA" (the "Project".) The prime contract was awarded to Allstate Engineering on September 24, 2011. Allstate posted a Miller Act payment and performance bond in connection with the Project, and the surety on that bond is defendant Western Surety Company. Allstate's contract with the government was basically to demolish the concrete foundations and driveways of 635 old military housing structures and to bring the site back to its natural state. The government had already demolished the old housing structures themselves, so all that was left was the 635 concrete pads and driveways.

Pursuant to Allstate Engineering's original contract with the U.S. Government, Allstate was to break up the concrete pads into pieces 8" minus, which means pieces of concrete that are 8 inches or smaller, and bury them. In furtherance of its prime contract with the government, Allstate hired Plaintiff and Counterdefendant AJ Acosta Company, Inc. (hereafter "Acosta") as a subcontractor to perform the demolition work. The subcontract between Allstate and Acosta is dated February 1, 2012.

//

//

2

## II.

## U.S. Government's Change Order and Acosta's Abandonment of its Subcontract

The government issued a change order in the middle of the Project, ordering Allstate to crush the concrete into pieces the size of 2" minus instead of to 8" minus.  In order to deal with the change in the specifications (crushing to 2" minus instead of 8" minus), the government suspended all work on the Project and issued a change order to Allstate for the new specifications. The USA's change order to Allstate was dated September 28, 2012. Allstate's original contract with the USA was $1,893,511.  This change order increased the contract amount for Allstate by $537,793.

Allstate and Acosta negotiated over a price to crush the concrete down to pieces of 2" minus, but they were not able to come to an agreement.  After the government lifted the suspension, Acosta refused to go back to work. As a result, Allstate performed the work by hiring other subcontractors and by using its own forces.

Acosta's subcontract with Allstate was for $734,000 and the subcontract required Acosta to demolish all 635 pads down to concrete size of 8" or less (8" minus.).  Out of the 635 pads in Acosta's subcontract, Acosta completed work on only 301 pads, leaving a balance of 334 pads where no work was done at all at the time Acosta abandoned the Project. (635 – 301 = 334.) Out of the 301 pads that Acosta completed, Acosta only properly performed its work on 82 of those pads.  On the remaining 219 pads (301 – 82 = 219), Acosta only properly demolished down to 8" minus on 70% of each of those 219 pads.  In other words, on 219 of the pads, Acosta only partially performed its work fully and correctly. On 30% of 219 of the pads, Acosta failed to crush down to the required 8" minus, thereby requiring Allstate to perform further work on those pads after Acosta's abandonment in order to properly crush them to 8" minus.  To finish Acosta's

3

required scope of work after Acosta abandoned, Allstate had to fix the 30% of the 219 improperly completed pads, plus Allstate had to perform the work on the balance of the 334 pads where Acosta performed no work at all.

Allstate gave every opportunity to Acosta to perform its work on the Project, but Acosta still failed to do so. Allstate sent written Notices of Non-Compliance to Acosta on May 17, 2012 and on October 11, 2012. Then, after Acosta still refused to perform after a written 48-hour Notice to Perform was provided to Acosta, Allstate was forced to terminate Acosta's performance under its subcontract by way of a Termination letter dated November 1, 2012.

### III.

### No Subcontract to Crush to 2" Minus; Extra Work

#### A. No Subcontract for the 2" Minus Work.

While Allstate was required to complete the project due to the government's change order, by crushing all the pads to 2" minus, Acosta's scope of work was to crush only down to 8" minus. Allstate is not seeking any monies from Acosta for the sums it had to spend to crush the concrete from 8" minus down to 2" minus. Acosta never had a subcontract with Allstate to crush to 2" minus. Allstate believes that Acosta will argue that it was entitled to receive the change order work to crush the concrete down to 2", but no such agreement was ever reached, and Acosta cannot claim any damages against Allstate for alleged lost profits or any other damages related to a subcontract it never had.

#### B. Extra Work Items.

Some extra work items were encountered at the Project. One of them was dust control which required Acosta to hire a water truck, and Allstate agreed to pay Acosta a separate $36,000 for that. There was also extra utility work that was encountered at the Project site, namely for the clearing of utility lines, and Allstate agreed to pay Acosta an additional $12,933.60 for that. Acosta claims many other items of extra work relating to utilities, but those items were either within the

4

scope of Acosta's subcontract, or were performed by another subcontractor hired by Allstate.

## IV.

## Calculations of Allstate's Damages Against Acosta

The value of Acosta's work, had it been all performed, and performed properly, which it was not, was $696,931.86. ($734,000 subcontract + $36,000 for water trucks for dust control + $12,933.60 for extra utilities work = $782,933.60 - $86,001.74 deducted for 30% noncompliance with 8" minus on 219 of the pads = $696,931.86.) Allstate paid Acosta the sum of $414,261. This resulted in an <u>unearned</u> contract balance of $282,670.86. ($696,931.86 final contract value - $414,261 paid to Acosta = $282,670.86.) Acosta is not entitled to this money because Acosta did not perform that work; it was unearned and not payable. Allstate had to use those remaining funds to correct and complete the work abandoned by Acosta.

Acosta abandoned the Project and did no work at all on 334 of the pads. In order to get Acosta's scope of work completed, Allstate hired another subcontractor by the name of Allied and paid them $214,000 and Allstate self-performed work at a cost of $391,437.75. This results in a credit due to Allstate of $322,766.88. ($282,670.86 unearned contract balance – $214,000 paid to Allied - $391,437.75 incurred by Allstate = $322,766.88.) Therefore, Acosta owes Allstate $322,766.88.

## V.

## BK of AJ Acosta Company, Inc. and Substitution of Joaquin Andres Acosta

### A. Allstate Engineering Has an Offset against AJ Acosta Company, Inc.

AJ Acosta Company, Inc. filed for BK. A true and correct copy of a recent Case Summary from the BK Court showing that AJ Acosta Company, Inc.'s BK is still pending as a Chapter 7 BK is attached to this Trial Brief as Exhibit "A".

Therefore, Allstate cannot collect its $322,766.88 from its subcontractor AJ Acosta Company, Inc.

However, Allstate can use that claim as an offset.  Article XXII of the subcontract between Allstate and AJ Acosta Company, Inc. states, in relevant part, that "…In the event of any such default…Contactor shall have the right…to perform Subcontract's obligations…and to deduct the cost thereof from any money due or to become due to the Subcontractor…." Article XIX of the subcontract states in relevant part that "The Contractor may set off against any amount payable to any person or assignee as a result of any assignment under this subcontract agreement with the same force and effect as the Contractor may set off against the Subcontractor."  A true and correct copy of pages 6 and 8 of the subcontract which contain Articles XXII and XIX are attached to this Trial Brief as Exhibit "B".

Under California <u>Civil Code</u> § 1459 and <u>Code of Civil Procedure</u> § 368, an assignee stands in the shoes of the assignor, taking any rights assigned, subject to the right to setoff and other defenses.  *Salaman v. Bolt* (1977) 74 Cal.App.3d 907, 919.  Allstate's offset against AJ Acosta Company, Inc. is so large, that plaintiff will not be able to recover anything against Allstate Engineering or its surety.

### B. <u>Motion to Reopen and to Substitute Plaintiff Was Granted.</u>

This litigation was stayed for years as a result of Acosta's BK, but this case was reopened as a result of a successful motion to reopen filed by Joaquin Andres Acosta, an individual. Mr. Acosta was the President of AJ Acosta Company, Inc.

### C. <u>BK Trustee's Abandonment of Claim and Assignment of Claim to Joaquin Andres Acosta.</u>

AJ Acosta Company, Inc.'s BK trustee abandoned AJ Acosta Company, Inc.'s claim against the bond that Allstate posted in connection with the Vandenberg Air Force Base Project. A true and correct copy of the Notice of

6

Trustee's Intention to Abandon Property is attached to this Trial Brief as Exhibit "C". As a result, AJ Acosta Company, Inc.'s claim against Allstate's bond reverted back to the estate of the debtor, AJ Acosta Company, Inc.  Thereafter, AJ Acosta Company, Inc., the corporation with whom Allstate contracted on the Project, assigned its claim to Joaquin Andres Acosta the individual, the former owner and President of AJ Acosta Company, Inc.  A true and correct copy of the Assignment is attached to this Trial Brief as Exhibit "D".   Based on this Assignment, this Court granted Joaquin Andres Acosta's motion to be substituted as a party in this case in place of AJ Acosta Company, Inc.  Therefore, Joaquin Andres Acosta, an individual, is now the Plaintiff in this case.

### D. <u>Joaquin Andres Acosta's Claim is Limited to a Claim against Allstate's Bond.</u>

A review of the Notice of Trustee's Intention to Abandon Property, attached as Exhibit "C" to this Trial Brief, shows that The Trustee intended to abandon "1) Interest in claim on completion bond for Vandenburg AFB against All State Construction (United States of America vs. Allstate Engineering, Case No. CV13-01438-DDP(JCx))." It's clear that the Trustee abandoned only AJ Acosta Company, Inc.'s claim against Allstate Engineering's bond, not the claim against Allstate.  As a result, AJ Acosta Company, Inc. had no right to pursue Allstate Engineering.  They only had the purported right to pursue Allstate's bonding company, Western Surety Company. Upon a BK, all of the rights of the bankrupt are vested in the BK Trustee, and are not available to the bankrupt to assert. *Reichert v. General Insurance Company of America* (1968) 68 Cal.2d 822, 829-830.  Because the cause of action against Allstate Engineering remains vested with A.J. Acosta Company, Inc.'s BK Trustee, Plaintiff lacks the capacity to assert a claim against Allstate Engineering.

//

**ALLSTATE ENGINEERING AND WESTERN SURETY COMPANY'S TRIAL BRIEF**

**E. <u>A Surety's Obligations are Commensurate with those of its</u>**
   **<u>Bond Principal and A Surety is Exonerated to the Extent the</u>**
   **<u>Claimant Fails to Pursue the Bond Principal</u>.**

A surety's liability is commensurate with that of its bond principal. If the principal is not liable, then neither is his or her surety. California <u>Civil Code</u> §§ 2809 and 2810. "The obligation of the surety must be neither larger in amount nor in other respects more burdensome than that of the principal." *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 40. "A surety is entitled to assert as defenses to payment of a surety bond all defenses available to its principal…(citations omitted)…where the principal is not liable on the obligation, neither is the guarantor"(citations omitted.) *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 48. Plaintiff has the burden of proving that Allstate is liable in this case. If Allstate is not found liable to Plaintiff, then neither can Western Surety Company be found liable.

In addition, by not pursuing the bond principal Allstate Engineering, and failing to lighten the surety's burden, the surety, Western Surety Company, is exonerated from liability. California <u>Civil Code</u> § 2845. By making this argument, Western Surety Company does not admit the validity of Plaintiff's claim, and in fact, expressly denies the validity of Plaintiff's claim.

**F. <u>Joaquin Andres Acosta's Rights are Limited to the Rights the</u>**
   **<u>BK Trustee Abandoned to the debtor, AJ Acosta Company,</u>**
   **<u>Inc., and to the Rights Assigned from A.J. Acosta Company,</u>**
   **<u>Inc. to Joaquin Andres Acosta.</u>**

In looking at the plain language of the rights that the BK Trustee abandoned to the debtor A.J. Acosta Company, Inc., it was only an "Interest in claim on <u>completion</u> bond…." (Emphasis added.) (Exhibit "C" to this Trial Brief.) There are no completion bond issues in this case. Only the U.S. Government can make a claim on the completion, or performance bond. The Miller Act, 40 USC §

8

3131-3134. Plaintiff, as a subcontractor to Allstate, is limited to a claim against the payment bond.  The Miller Act, 40 USC § 3133. Because the BK Trustee only abandoned its claim on the completion or performance bond, the BK Trustee maintains its rights to the payment bond, and Plaintiff has no right to pursue the payment bond here.

Upon a BK, all of the rights of the bankrupt are vested in the BK Trustee, and are not available to the bankrupt to assert.  *Reichert v. General Insurance Company of America* (1968) 68 Cal.2d 822, 829-830.  In the instant case, because the cause of action against the payment bond remains vested with A.J. Acosta Company, Inc.'s BK Trustee, Plaintiff lacks the capacity to assert a claim against the payment bond and also lacks the capacity to assert a claim against Allstate Engineering.

**VI.**

**Joaquin Andres Acosta's Claims are Time-Barred**

In Joaquin Andres Acosta's moving papers to substitute himself as Plaintiff in this case, he asserted that it was he, as an individual, who all along had contracted with Allstate Engineering.  (Motion for Reopening and Substitution of Party, Dkt. 51, p. 10:1-12.) To the extent that Acosta as an individual was the contracting party, then his claim is long barred by California's 4 year statute of limitations on contract actions.  Code of Civil Procedure § 337(a). In addition, the Miller Act sets a one year statute of limitations against Miller Act payment bonds. 40 USC § 3133(b)(4). Therefore, Joaquin Andres Acosta's claim against Western Surety is also long barred by the statute of limitations.

**VII.**

**There is an Attorney's Fees Clause in the Subcontract**

Article XXXVI of the subcontract is an attorney's fees clause.  Joaquin Andres Acosta will be subject to an attorney's fees award against him should he lose this case.  By substituting himself in as Plaintiff, he has opened himself up to

9

the possibility of a substantial attorney's fees award against himself, personally.  A true and correct copy of page 12 of the subcontract which contains the attorney's fees clause is attached as Exhibit "E" to this Trial Brief.

## VIII.

## Conclusion

For the foregoing reasons, and based on the evidence to be provided at Trial, this Court should find in favor of Allstate Engineering and Western Surety Company, and against the Plaintiff Joaquin Andres Acosta.

Respectfully submitted,

Dated: October 15, 2019            **THE HOROWITZ LAW FIRM**

By: Jeffrey D. Horowitz, Esq.
Attorney for Defendant
ALLSTATE ENGINEERING

Dated: October 15, 2019            **BOOTH, MITCHEL & STRANGE, LLP**

/S/ Craig E. Guenther
By: Craig E. Guenther, Esq.
Attorney for Defendant
WESTERN SURETY COMPANY

**ALLSTATE ENGINEERING AND WESTERN SURETY COMPANY'S TRIAL BRIEF**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on October 15, 2019, a true and correct copy of the foregoing **ALLSTATE ENGINEERING AND WESTERN SURETY COMPANY'S TRIAL BRIEF** was served on all parties and counsel of record via CM/ECF.

Dated: October 15, 2019

By: Jeffrey D. Horowitz, Esq.
Attorney for Defendant and Counterclaimant
ALLSTATE ENGINEERING

11

EXHIBIT "A"

**6:14-bk-12550-SY** A.J. Acosta Co., Inc.
**Case type:** bk **Chapter:** 7 **Asset:** Yes **Vol:** v **Judge:** Scott H. Yun
**Date filed:** 02/28/2014 **Date of last filing:** 10/10/2019

# Case Summary

**Office:** Riverside                **Filed:** 02/28/2014

**County:** SAN
BERNARDINO-            **Terminated:**
CA
**Fee:** Paid            **Debtor discharged:**
**Origin:** 0                **Reopened:**
**Previous term:**
                        **Converted:** 07/31/2015

                    **Debtor dismissed:**
                        **Confirmation**
**Joint:** n                **hearing:**

**Original
chapter:** 7
**Current
chapter:** 7
**Previous
chapter:** 11

**Nature of debt:** business
**Pending status:** Awaiting 341 Meeting
**Flags:** CONVERTED

| | | | |
|---|---|---|---|
| **Trustee:** United States Trustee (RS) | **City:** Riverside **Phone:** (951) 276-6990 | **Fax:** (951) 276-6973 | **Email:** ustpregion16.rs.ecf@usdoj.gov |
| **Trustee:** John P Pringle (TR) | **City:** Los Angeles **Phone:** (323) 724-3117 | **Email:** brenfro@rpmlaw.com | |

**Party 1:** A.J. Acosta Co., Inc.   (Debtor)
        Tax ID / EIN: 33-0626505

| | | |
|---|---|---|
| **Atty:** Ronald W Ask (T) | **Represents party 1:** Debtor | **Phone:** 951-684-5608 **Fax:** 951-684-1106 **Email:** elc@elderlawcenter.net |
| **Atty:** Kenneth T Calegari | **Represents party 1:** Debtor | **Phone:** 858-304-1988 **Fax:** 858-304-1998 **Phone:** 909-920-0443 |

**Atty:** W. Derek May | **Represents party 1:** Debtor | **Email:** wdmlaw17@gmail.com

**Atty:** Stephen R Wade | **Represents party 1:** Debtor | **Phone:** 909-985-6500
**Fax:** 909-399-9900
**Email:** srw@srwadelaw.com

**Atty:** Robert H. Ziprick | **Represents party 1:** Debtor | **Phone:** 909-798-5005

**Location of case files:**

**Volume:** CS1

The case file may be available.

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/15/2019 10:56:54 | | | |
| **PACER Login:** | jh1448:2796241:0 | **Client Code:** | Allstate |
| **Description:** | Case Summary | **Search Criteria:** | 6:14-bk-12550-SY |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

EXHIBIT "B"

aspect of the Agreement as reasonably necessary to present the change as a pass-through claim to the Owner, and Subcontractor shall cooperate fully with Contractor in assisting Contractor to present said pass-through claim to the Owner. All price, schedule and other adjustments to the Agreement arising out of any such change shall be limited to the change in subcontract value and related schedule changes as awarded by the Owner through an equitable adjustment to the General Contract. Contractor reserves the right to decline to submit any pass-through claim that Contractor, in its sole discretion, considers to be frivolous or unwarranted.

**ARTICLE XI.   INSPECTION AND DEFECTIVE WORK:** The Subcontractor shall at all times provide sufficient, safe and proper facilities for the inspection of the Work by the Contractor, the Owner and/or their authorized representatives in the field, at shops, and at any other place where materials or equipment for the Work are located in the course of preparation, manufacture, treatment, or storage.  The Subcontractor shall, within **twenty-four (24)** hours after receiving written notice from the Contractor, take down and remove all portions of Work and remove from the Premises all materials, whether worked or un-worked, which the Contractor concludes (1) are unsound, defective, or improper; (2)  in any way fail to conform to this Agreement, the Plans, Specifications, other Contract Documents, (3) are not in compliance with applicable building codes or industry standards; or which (4) non-responsive to information from the Owner or to information from the Owner's engineer, construction manager, or other agent.  The Subcontractor, at it's own cost and expense, shall replace all such defective work or materials with proper and satisfactory work and materials, and shall make good all work damaged or destroyed by, or as a result of, such unsound, defective, improper or nonconforming work or materials or by  the process of taking down, removal or replacement thereof.

**ARTICLE XII.   FAILURE TO PERFORM:** Listed below are non-exclusive events which may constitute a material default hereunder on the Subcontractor's part.  Each of the following events shall constitute a material default by Subcontractor under this Agreement:

(1)     At any time refuses or neglects to supply a sufficiency of skilled workman or materials of the proper quality and quantity;

(2)     Fails in any respect to prosecute the Work with promptness and diligence;

(3)     ~~Causes, by any act or omission, the stoppage or delay of, or interference with, or damage to, the Work of Contractor or any other contractors or subcontractors on the Project;~~     *AA*

(4)     Fails to  perform any of the terms, conditions, or  provisions of this Agreement or of the other Contract Documents;

(5)     Becomes the subject of a voluntary or involuntary bankruptcy proceeding;

(6)     Makes a General assignment for the benefit of creditors, or otherwise acknowledges insolvency;

(7)     Becomes insolvent, unable to pay, or fails to pay its obligations as they mature;

(8)     Fails to provide any required Subcontract Bond upon request;

(9)     Any other material breach of Subcontractor's obligations under this agreement.

In the event of any such default, Contractor shall have the right, in addition to all other rights and remedies provided by this Agreement, the other Contract Documents, and by law, after **forty-eight (48)** hours written notice to Subcontractor transmitted by regular U.S. mail delivery to Subcontractor's last known address::

(1)     To perform Subcontractor's obligations itself or through others, to furnish all labor and materials required for the completion of the Work and to deduct the cost thereof from any moneys due or to become due to the Subcontractor under this Agreement;

(2)     To terminate this Agreement, and the employment of the Subcontractor for all or any portion of the Work on the Project;

(3)     ~~To enter upon the premises and take possession, for the purpose of completing the Work, of all materials, equipment, scaffolds, tools, appliances, and other items thereon.  All of which the Subcontractor hereby transfers and assigns to the Contractor for such purpose, and;~~     *AA*

(4)     To employ any person, persons, or subcontractors to complete the Work and to provide all the labor, services, materials, equipment and other items required for such completion.

In case of termination of this agreement or the employment of the Subcontractor, the Subcontractor shall not be entitled to receive any further payment under this Agreement until the Work shall be wholly completed to the satisfaction of the Contractor and shall have been accepted by the Contractor. After acceptance by Contractor of the wholly completed work, if the unpaid balance of the amount to be paid under this Agreement shall exceed the cost and expense incurred by the Contractor in completing the Work, and if Subcontractor has not been fully compensated for satisfactorily completed work prior to termination, such excess shall be paid by the Contractor to the Subcontractor.  The cost and expense of completing the work shall include not only the direct cost of completing the Work to the satisfaction of the Contractor and of performing and furnishing all labor, services, materials, equipment and other items required thereof but shall also include all losses, damages, costs and expenses, including legal costs and attorney fees sustained, incurred or suffered by reason of or resulting from the Subcontractor's default.

suppliers of the Subcontractor files or maintains a Mechanic's Lien or Stop Notice claim against the Project or Premises or any part thereof, or any interest therein, or any improvements thereon, or claim of any kind against any moneys due or to become due from the Owner to the Contractor, or from the Contractor to the Subcontractor, for or on account of any work, labor, services, materials, equipment or other items performed or furnished in connection with the Work, including any change order or supplemental agreement for extra or additional work in connection with the Project, the Subcontractor agrees to cause such liens and claims to be satisfied, removed and discharged at Subcontractor's own expense by release bond, direct payment or otherwise within ten (10) days from the date of the filing thereof. Upon Subcontractor's failure to promptly discharge or have removed any and all such liens and claims, the Contractor shall have the right, in addition to all other rights and remedies provided under this Agreement, the Contract Documents, and by law, to cause such liens and claims to be satisfied, removed and discharged by whatever means the Contractor chooses. The Subcontractor agrees to indemnify, defend and save harmless the Contractor against any and all such liens and claims and actions brought, and all judgments rendered thereon. The Subcontractor also agrees to indemnify, defend and save harmless the Contractor from and against any and all losses, damages, liability, costs and expenses, including legal costs and attorney fees, which the Contractor may incur in connection therewith.

ARTICLE XIX.    ASSIGNMENTS SET OFF: Any delegation, subletting or assignment, by operation of law or otherwise, of all or any portion of the obligations to be performed hereunder by the Subcontractor without the prior written consent of the Contractor shall be void.  In the event of any transfer, hypothecation or assignment by the Subcontractor of the right to receive all or any part of any payments to become due hereunder, the Contractor may, at any time thereafter, withhold any or all moneys or payments due or to become due hereunder until final payment becomes due and until all ~~conditions precedent to such final~~ payment have been satisfied. The Contractor may set off against any amount payable to any person or assignee as a result of any assignment under this subcontract agreement with the same force and effect as the Contractor may set off against the Subcontractor.

ARTICLE XX.   TERMINATION OF AGREEMENT: The Contractor shall have the right ~~at any time~~ *With Proper Notice F Justifia Cause* by written notice to the Subcontractor, to terminate this agreement.  Such termination shall be effective in the manner specified in said notice and shall be without prejudice to any claims which the Contractor or Subcontractor might have against each other.

Upon receipt of such notice, the Subcontractor shall, unless the notice directs otherwise, immediately discontinue the Work and placing of orders for materials, facilities and supplies in connection with the performance of this Agreement. The Subcontractor shall also, if requested, make every reasonable effort to procure cancellation of all existing orders for contracts upon terms satisfactory to the Contractor.  Furthermore, the Subcontractor shall do only such work as may be necessary to preserve and protect the work already in progress and preserve and protect materials, supplies and equipment on the Premises or in transit thereto.

Upon such termination, the continuing obligations of this Agreement shall continue as to work already performed and as to bona fide obligations assumed by the Subcontractor prior to the date of cancellation or termination.  The Subcontractor shall be entitled to only pro rata compensation for the portion of this agreement already performed, including materials for which it has made firm purchase contracts which cannot be terminated without additional costs or penalties. It is understood and agreed that the Contractor shall be entitled to all such materials purchased whether or not delivered to the Premises.  The Subcontractor shall not be entitled to any compensation for anticipated profits on unperformed work or for materials or equipment unfurnished except those materials for which it has made firm purchase contracts which cannot be terminated without additional costs or penalties.

If Owner exercises its right to terminate the General Contract for Convenience, in whole or in part, pursuant to a Federal Acquisition Regulation providing for such termination (such as FAR 52.249-1, FAR 52.249-2 e.g., FAR 52.249-3, FAR 52.249-4, FAR 52.249-5, or any similar Federal Acquisition Regulation, referred to in this paragraph as "the FAR"):

a.  The Contractor shall have the right to give notice to Subcontractor of the Government's termination, in whole or in part, and such notice may be given by personal delivery, regular mail, fax transmission, e-mail, or other comparable means.
b.  Subcontractor shall immediately stop work as specified in the notice.
c.  Subcontractor shall place no further sub-subcontracts or orders (referred to as sub-subcontracts in this clause) for materials, services, or facilities, except as necessary to complete the continued portion of the contract.
d.  Subcontractor shall terminate all sub-subcontracts to the extent they relate to the work terminated.
e.  Subcontractor shall assign to the Government, as directed by the Contracting Officer, all right, title, and interest of the Subcontractor under the sub-subcontracts terminated, in which case the Government shall have the right to settle or to pay any termination settlement proposal arising out of those terminations.
f.  Subcontractor hereby consents to Contractor's assigning all right, title and interest in this Subcontract to the Government under such terms and conditions as are consistent with the FAR as applicable to the General Contract.
g.  Subcontractor shall complete performance of the work not terminated.
h.  Subcontractor shall take all other actions that the Contracting Officer and/or Contractor may require to enable the

**Page 8 of 15**

EXHIBIT "C"

1 | JOHN P. PRINGLE, SBN 072300
6055 E. Washington Boulevard, Suite 500
2 | Los Angeles, CA 90040
Telephone (323) 727-9589
3 | Facsimile (323) 724-5410

4 | Chapter 7 Trustee

5

6

7

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION**

10

| | |
|---|---|
| 11 | In re | Case No. 6:14-bk-12550-MJ |
| 12 | A.J. ACOSTA CO., INC., | Chapter 7 |
| 13 | | **NOTICE OF TRUSTEE'S INTENTION TO** |
| 14 | Debtor. | **ABANDON PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 554(a), Fed. Rule** |
| 15 | | **Bank. Pro. 2002(c) & LBR 6007-1** |
| 16 | | Hearing Date: (No Hearing Set) |

17

18 | **TO THE HONORABLE MEREDITH JURY, UNITED STATES BANKRUPTCY JUDGE,**

19 | **OFFICE OF THE U.S. TRUSTEE, CREDITORS AND ALL INTERESTED PARTIES:**

20 |   **YOU ARE HEREBY NOTIFIED THAT** immediately after fourteen (14) days from the

21 | date of mailing of this Notice, John P. Pringle, the duly appointed Chapter 7 Trustee herein (the

22 | "Trustee"), intends to and will abandon the following described property as burdensome and of

23 | inconsequential value to estate.

24 |   The Trustee intends to abandon the following:

25 |   1) Interest in claim on completion bond for Vandenburg AFB against All State Construction

26

27 |     (United States of America vs. Allstate Engineering, Case No. CV13-01438-DDP(JCx)).

28 | ///

1

13

1    **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 6007-1,

2    any objections or request for hearing must be filed with the United States Bankruptcy Court, located

3    at 3420 Twelfth Street, Riverside, California 92501, and served upon the Trustee and the United

4    States Trustee, not more than fourteen (14) days after service from this Notice.  If no request for

5    hearing is timely filed and served, the Trustee shall be deemed to have abandoned any interest in

6    the Property fourteen (14) days from the date of mailing this notice which is shown on the attached

7    proof of service.  No court order will be required for the abandonment to be effective.  If timely

8    objection and request for hearing is filed and served, the Trustee shall within 20 days from the date

9    of service of such contact the Court and obtain and give notice of the hearing date to those entities

10   objecting and to the U.S. Trustee.

11

12   Dated: March ___7___, 2018

         _____
13                                                          John P. Pringle
                                                            Chapter 7 Trustee
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

/4

EXHIBIT "D"

JOAQUIN ANDRES ACOSTA
President of
AJ ACOSTA COMPANY INCORPORATED
42114 Big Bear Boulevard
Big Bear Lake, California

## Assignments of Interests, Stocks, Assets and Properties
## of AJ ACOSTA COMPANY, INCORPORATED

joaquin andres acosta, as President and Sole Stock holder of all the interests and holder of all Tangible and Intangible Assets, which includes, but not limited to: All machinery, Trucks, Cars, Office Equipment, Furniture, Tools, Safety Equipment, Inventory, Stock, Real Estate, Land, Office Buildings, Sheds, including all Intelectual Properties, all rights and interests in all projects commenced or on behalf of company up to this date, all Accounts Receivables, of A.J. ACOSTA COMPANY INCORPORATED, California Secretary of State filing No. 1748337, filed on July 29, 1994, located at 42114 Big Bear Blvd., Big Bear Lake, California, hereby transfers and assigns hereby transfers all property held by A.J. ACOSTA COMPANY INCORPORATED, which includes but not limited to:

> All Tangible and Intangible Assets, All machinery, Trucks, Cars, Office Equipment, Furniture, Tools, Safety Equipment, Inventories, Stocks, Real Estate, Lands, Office Buildings, Sheds, Appurtenances thereof, All Intellectual Properties, All Accounts Receivables-owned wholly or in part, Parts, including All rights and Interests in all projects commenced or on behalf of company up to this date, including Rights, Title, Interests or Liens that were commenced in any Case filed in Court for collection of debts by A.J.ACOSTA COMPANY INCORPORATED.

I, JOAQUIN ANDRES ACOSTA, President of A.J. ACOSTA COMPANY, INCORPORATED, hereby transfers and assigns all Titles, Rights, Interests, Liens, in said aforementioned properties. All Rights, Titles, Interests, Liens, Intellectual Property Rights to All the foregoing properties are assigned and transferred in full, without any tax liability or reservations (as all liabilities have been accounted for in Bankruptcy) to:

> joaquin andres acosta, 42114 Big Bear Boulevard, Big Bear Lake, California.

On this First day of May, A.D., in the Year of Our Lord, Two-thousand eighteen.

**(Corporate Seal)**

By: _Joaquin Andres Acosta_
JOAQUIN ANDRES ACOSTA
President and Sole Stock Holder
of A.J.ACOSTA COMPANY INC.

Accepted by joaquin andres acosta on this First day of May, A.D., in the Year of Our Lord, Two-thousand eighteen.

_Joaquin Andres Acosta_
joaquin andres acosta.

18

EXHIBIT "E"

**ARTICLE XXXII.      PROPRIETARY INTEREST AND CONFIDENTIALITY:** All data, information, reports and any other material and documentation, in any form, gathered or prepared by Subcontractor in performance of the services shall be the sole property of Customer or Allstate Engineering, as the case may be. Subcontractor shall not disclose or release any data, information, or other material or documentation, in any form, gathered pursuant to this Agreement to any party, or keep or use for Subcontractor's own purposes any such data, information, material or documentation, in any form, without the prior written consent of Allstate Engineering

**ARTICLE XXXIII.      RESTRICTIONS ON ACTIVITIES:** Subcontractor agrees to render its services to the best of its ability, using its skill, judgment and best efforts to promote the interests and business of Allstate Engineering . Subcontractor agrees not to engage in any type of activity that is or may be contrary to the interests, business or benefit of Allstate Engineering . Subcontractor agrees that during the term of this Agreement, Subcontractor will not solicit business or work directly from Customer or Owner and will not, directly or indirectly, as a contractor, subcontractor, agent or representative, perform services directly for Customer or Owner.

**ARTICLE XXXIV.      ENTIRE AGREEMENT:** This Agreement, including Exhibit A, B, C, and D attached hereto, constitutes the entire agreement between the parties hereto and supersedes all prior or contemporaneous oral or written communications. No oral representations, previous proposals, or other agreements have been made by the Contractor except as stated in this agreement. This Agreement may not be changed in any way except by a writing as herein provided, and no term or provision hereof may be waived by the Contractor except in writing signed by it's duly authorized officer or agent. The article descriptions of any term or provisions of this Agreement are for convenience only and shall not be deemed to limit, restrict or alter the content, meaning or effect thereof.

**ARTICLE XXXV.      NO WAIVER OF PERFORMANCE:** The failure of either party to strictly enforce any of the terms, covenants or conditions, of this agreement, or to exercise any of its rights, shall not be construed as a waiver or relinquishment of any term, covenant, condition or right with respect to further performance.

**ARTICLE XXXVI.      ATTORNEY FEES:** Allstate Engineering shall have the right to collect from Subcontractor reasonable attorney fees and other costs of enforcing any provision or obligation arising under this agreement. Subcontractor expressly agrees to payment of such reasonable attorney fees and costs.

**ARTICLE XXXVII.  SEVERABILITY:** If any provision of this agreement is determined to be illegal, void, or unenforceable, for any reason, the same shall be severed from this agreement and the remainder of this agreement shall be given full force and effect. Such voidability or unenforceability shall not effect the other provisions of this agreement.

**ARTICLE XXXVIII.  CONTRACT PROVISIONS:** The provisions set out in Exhibits A, B, C, and D attached hereto including any special provisions are incorporated herein by reference and made a part thereof. The said parties, for themselves, their heirs, executors, administrators, successors and assigns, do hereby agree to full performance of all of the terms and provisions herein contained and terms and provisions incorporated by reference.

**IN WITNESS HEREOF the parties agree to the provisions of this Agreement on the date set forth above:**

Allstate Engineering
(Contractor)

By:

Name: ~~Josh Choi~~ P.D. JORDAN

Title: ~~Owner~~ VP OPERATIONS

License No: ___883852___

A. J. Acosta Company Inc.
(Subcontractor)

By: _____

Name: _Andy Acosta_

Title: _CEO_

License No.: ___514620___

**If a corporation, corporate seal and signatory authority must be present**

# PROOF OF SERVICE BY MAIL
## (1013a, 2015.5 C.C.P.)

STATE OF CALIFORNIA        )
                           )    ss:
COUNTY OF LOS ANGELES      )

I am employed in the County of Los Angeles, State of California, I am over the age of eighteen years and not a party to the within entitled action; my business address is, 14156 Magnolia Boulevard, Suite 200, Sherman Oaks, CA 91423.

I am familiar with the practice of this office whereby the mail is sealed, given the appropriate postage, and placed in a designated mail collection area. The mail is thereafter deposited in a United States mailbox at the close of each business day.

On October 15, 2019, I served the foregoing documents **ALLSTATE ENGINEERING AND WESTERN SURETY COMPANY'S TRIAL BRIEF** on the parties by placing true copies thereof in a sealed envelope addressed as follows:

Joaquin Andres Acosta
P.O. Box 2889
Big Bear Lake, CA 92315
*Plaintiff and Counter-Defendant, In Pro Per*

Craig E. Guenther
BOOTH, MITCHEL & STRANGE LLP
701 South Parker Street, Suite 6500
Orange, CA 92868-4733
Tel: (714) 480-8500; Fax: (714) 480-8533
*Attorney for Defendant Western Surety Company*

**(X) (BY MAIL)** I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California.

( ) (BY ELECTRONIC SERVICE) The above document was filed electronically with the Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

( ) (BY PERSONAL SERVICE) I delivered such envelope by hand to the offices of the addressee(s).

( ) (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**(X) (FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Dated: October 15, 2019

Marine Kaladjian

1
**PROOF OF SERVICE**